**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **MARK WALTERS** | § | |
| | § | |
| **v.** | § | **1:16-CV-1092-DAE-AWA** |
| | § | |
| **TENANT BACKGROUND SEARCH** | § | |

## <u>ORDER</u>

Before the Court is Defendant's Motion to Compel and Request for Sanctions (Dkt. No. 22); Plaintiff's Opposed Motion for Discovery Sanctions and/or Striking Defendant's Motion for Summary Judgment (Dkt. No. 30); Plaintiff's Motion for Sanctions under Federal Rule of Civil Procedure 11(c)(2) (Dkt. No. 35); Defendant's Motion for Sanctions under Fed. R. Civ. P. 11(c)(2) (Dkt. No. 36); Defendant's Motion to Strike (Dkt. No. 39); and all associated responses and replies. The motions were referred to the undersigned for resolution, pursuant to 28 U.S.C. § 636(b)(1)(A) and FED. R. CIV. P. 72.

## I.  Background

In the first of the sanctions motions listed above, Tenant Background Search ("TBS") sought to have the Court compel Walters to respond to written discovery, and to impose sanctions for his refusal to participate in meaningful discovery.  Dkt. No. 22.  Before the Court was able to act on that motion, Walters and TBS filed the other sanctions motions listed above, and TBS filed its summary judgment motion.  Noting that while "there may well be a good basis for imposing sanctions against Walters," because of the filing of the additional motions, the Court stated it would "take up all of these issues at one time, after the motion for summary judgment is ruled upon."  Dkt. No. 41 at 2. On August 1, 2019, the district judge granted summary judgment in this case in favor of Tenant Background Search.  Accordingly, the various sanctions motions are now ripe for decision.

Walters, who in this and all of the prior cases has been pro se, has filed two sanctions motions. Both of those motions complain about a single issue related to the signing of his deposition. TBS has also filed two motions. The first was already mentioned, and related to Walters' failure to respond properly to TBS's written discovery requests. The second seeks sanctions for a "harassing and baseless comment not supported by any fact or evidence about Defendant's counsel's wife" in Walter's response to the motion for summary judgment. Dkt. No. 36 at 1. The final motion asks the Court to strike from various pleadings Walters' inappropriate comments about TBS's counsel's spouse.

As the Court has noted previously, Walters is a "frequent litigant" in this court, having filed nine lawsuits here in the past seven years, five of which (including this case) were filed under the Fair Credit Reporting Act. Walters also has a habit of making inappropriate statements in pleadings, and using foul and threatening language in depositions. For example, in his reply related to his first sanctions motion, Walters stated:

> The Court was notified of [Plaintiff's claim that opposing counsel made a false statement in the prior FCRA case] in Plaintiff's motion to vacate, but rather than administer justice, the Court buried its head in the sand, failed to review emails and a taped recording of the call between counsel, Mr. Hensley, and Plaintiff. The conduct of the Court is a disgrace.

Dkt. No. 34 at 2. And in his deposition in this case, Walters made the following statement to TBS's counsel:

> I don't trust you, okay. And let's make sure that we have an understanding why I don't trust you. All right. When Mr. Hensley wants to perjure himself in a declaration, file it in court, okay. If I fuck up, that's on me, but I don't need that motherfucker, okay, making accusations that are untrue, okay. So don't expect me to come in here and get on my knees and suck your cock, all right, because I'm not going to do that. All right.

Dkt. No. 28-2 at 17 (deposition page 65).  The deposition is replete with similar statements.  *E.g.,*

*id.* at 24 (deposition page 93) (telling counsel "fuck you," and stating that he would "be happy to call

you an asshole in front of the jury").  Indeed, at the completion of the deposition he admitted he had

been "tr[ying] to irritate" opposing counsel, because

> I wanted to try and throw you off.  Absolutely.  The same way you're in that seat
> trying to throw me off.    Isn't that part of the whole legal javelining that we have
> going on here?  Producing documents at the end of business on the last day. You
> know the routine.

*Id.* at 25 (deposition page 98).

While this behavior is more than enough to warrant sanctions, there is at least probable cause

to believe Walters has done something much more problematic—fabricated the entire factual basis

of this and his prior lawsuit.  In the prior case, filed about six months before this one, Walters sued

Sentry Link LLC, based on the assertion that he was negotiating a "consulting agreement" with

"Kava Kava Austin, an Austin based startup company."  *Walters v. Sentry Link LLC*, No. 1:16-cv-

383-LY; Dkt. No. 1 at 8.  Walters alleged that Kava Kava Austin required that he submit to a

criminal background check before it would enter into the contract, and that it used Sentry Link for

that purpose.  *Id.*  Just like this case, he contended that the criminal history report that was generated

contained inaccuracies, those were not cured, and that he was "denied the consulting contract" as a

result.  *Id.*  When pressed in discovery for information regarding who he dealt with at Kava Kava,

Walters identified the person as "Fred Lewis."  In the Report & Recommendation on Sentry Link's

motion for summary judgment, the undersigned noted the questionable nature of many of Walter's

claims:

> Sentry Link questions—justifiably, in the Court's view—whether "Fred Lewis,"
> Walters' alleged prospective employer, actually exists or requested the report at all.

*See* Dkt. No. 20 at 2 n.1 ("Defendant's counsel has serious doubts that Kava Kava Austin or its owner, 'Fred Lewis,' do or ever did exist."). Sentry Link states that it has been unable to reach Fred Lewis. One number Walters gave went to a Geico representative, the other went to voicemail, and there has been no response. As of the time of the motions for summary judgment, Walters had not yet been deposed, having failed to appear for the deposition scheduled in December 2017. Thus, the only evidence that "Fred Lewis" offered Walters a consulting contract, and later rescinded the offer based on the background check, comes from Walters' declarations and a copy of what Walters claims was the alleged consulting contract—a contract the Court finds hard to believe is what it purports to be. The Court's review of the records leaves a serious question regarding whether Walters has fabricated the entire factual basis for this lawsuit.

*Walters v. Sentry Link LLC*, No. 1:16-cv-383- LY; Report & Recommendation (Dkt. No. 36) at 7 n.3 (May 9, 2018).

The evidence in this case now causes the Court to believe that Walters may have fabricated the factual basis of this lawsuit as well. Here, Walters claims that he requested "Bill Shire" of "ATX Tenants" to assist him in leasing a residence. He claims that he located a potential house to rent, submitted an application and was "required to submit to tenant background history and tenant background screening." Dkt. No. 1-2 at 4. He asserts that "Bill Shire, the manager in charge of renting the house" retained TBS to conduct the screening, that the report TBS provided to Shire contained inaccuracies, and as a result Walter's lease application was denied. *Id.* As the undersigned noted in the January order, just as the mysterious "Fred Lewis" could not be confirmed to exist in the *Sentry Link* case, the Court

cannot confirm the existence of Mr. Shire or ATX Tenants. In a previous suit this court noted that there was justifiable question as to whether "Fred Lewis" actually existed or requested a report. This case involves similar allegations of violation under the FCRA, and in which Bill Shire and ATX Tenant also cannot be confirmed to exist. *The Plaintiff has listed the phone numbers for Fred Lewis and Bill Shire as the same in multiple documents filed with this court and in these cases*. Shockingly, both individuals allegedly maintain P.O. Boxes at the same Post Office in Pflugerville, though the box for Mr. Shire doesn't even exist.

Dkt. No. 28 at 2 n.1 (citation omitted; emphasis added). Walters did not even acknowledge this highly suspicious evidence in his response to the summary judgment motion, and when questioned about it in his deposition, he had no explanation for any of these facts. Dkt. No. 28-2 at 8; 14-16; 24-25 (deposition pages 30, 55-60; 96-98).

In short, while there is not enough evidence before the Court to make a definitive conclusion on this point, it appears that Walters has filed at least two federal lawsuits alleging FCRA claims based on "facts" that were fabricated for the sole purpose of suing credit or consumer reporting entities to complain about reports that he himself caused to be generated. Not only is such behavior sanctionable, if it in fact happened, it would be criminal. *See, e.g.*, 18 U.S.C. § 1623(a).

## II. Analysis

**A.     Walters' Motions**

As noted, Walters filed two sanctions motions, both complaining about the same issue. Specifically, Walters claims that counsel for TBS prevented Walters from receiving a copy of his deposition. He alleged that:

> At the conclusion of the deposition, the court reporter asked Plaintiff for an address to send a copy of the transcript. Defense counsel, Michael Kirkland, interjected and communicated to both Plaintiff and the court reporter that he would serve Plaintiff a copy of the deposition transcript. Mr. Kirkland deliberately failed in his duty under the Court's scheduling order and the *Rules* to serve discovery.

Dkt. No. 30 at 3; *see also* Dkt. No. 35. As TBS notes in its responses to both motions, Walters' claims about what happened at the end of his deposition are refuted by the transcript of that very deposition:

> THE REPORTER: Before I announce the deposition is complete pursuant to the federal rules, are there stipulations regarding custody of the transcript, exhibits, and/or any other pertinent matters?

MR. KIRKLAND: No.

MR. WALTERS: No.

THE REPORTER: All right.

(Deposition concluded at 3:36 p.m.)

Dkt. No. 28-2 at 25 (deposition page 99). Not only does the court reporter certify that the transcript of the deposition is complete, she also certified that "the signature of the deponent was not requested by the deponent." *Id.* at 25-26 (deposition pages 100-101). Finally, as TBS noted, a complete copy of the deposition transcript was attached as an exhibit to TBS's motion for summary judgment (Dkt. No. 28-2), thereby giving Walters complete access to the deposition to the extent he wished to rely on it in response to the summary judgment motion. Both of Walters' motions for sanctions are completely baseless and will be denied.

**B.      Tenant Background Search's Motions**

TBS filed sanctions motions for two reasons. First, it sought sanctions for Walters' failure to engage in meaningful discovery. Dkt. No. 22. Second, it requests sanctions for Walters making inflammatory statements about the wife of one of TBS's attorneys in this case. Both motions have merit.

With regard to the first motion, Walters failed to produce any records in response to the requests for production, and made general, boilerplate objections. When TBS informed him of this, he failed to make any meaningful supplementation, and stood by his objections. Similarly, he refused to respond to requests for admission that he was fully capable of responding to. Finally, his responses to interrogatories were similarly lacking. It is likely that Walters' failure to provide meaningful responses to the discovery served on him has something to do with the issues discussed

in the "Background" section of this order—if, for example, Walters never applied to lease a house with Mr. Shire's assistance, it would be difficult to produce the lease application or other communications between Walters and Shire. Regardless, Walters' behavior in discovery in this case was as lacking as it was in the *Sentry Link* case. There, the Court ordered Walters to compensate Sentry Link for the attorney's fees it incurred due to his misconduct. It also warned Walters that continued misconduct would result in further sanctions. Such further sanctions are warranted here.

TBS's other motion relates to Walters making allegations in a number of pleadings about the spouse of one of TBS's attorneys. The Court will not further the harm Walters attempted to cause by describing his remarks here, other than to say that they have absolutely nothing to do with this case, and clearly violate the Federal Rules. Walters' only response to the motion is his assertion that his statements are true, and the false claim that the matter "came up during [Walters'] deposition." Dkt. No. 38 at 3. The truth or falsity of the statements is irrelevant, as they have nothing whatsoever to do with this lawsuit. The statements are a classic example of what Rule 11 addresses when it prohibits pleadings "presented for any improper purpose, such as to harass." FED. R. CIV. P. 11(b)(1). And Walters' claim that the statements are pertinent to the case because the issue "came up" during his deposition is absurd. As the Court has already noted, Walters' deposition is chock full of outrageous and abusive conduct by him. The fact that during his deposition he made a derogatory statement about the spouse of one of the attorneys—that was in no way responsive to the question asked him— does not justify him continuing that harassment in pleadings. This is yet another reason why sanctions are appropriate. It also justifies the Court ordering the offending statements stricken from the applicable pleadings.

### III. Sanctions

Walters has more than worn out his welcome here. While access to the courts is an important privilege, if that privilege is abused it may be restricted. It is apparent that such a sanction is appropriate here. Walters' behavior has attempted to make a mockery of the civil justice system. His profane language and absurd actions, in the context of cases he appears to have created out of thin air and his imagination, are an affront to the integrity of our judicial system.

TBS's second motion for sanctions was filed pursuant to Rule 11. To prevail on such a motion, the movant must first serve the motion on the offending party and give their opponent 21 days to withdraw the offending pleading. FED. R. CIV. P. 11(c)(2). This "safe harbor" provision gives the party "an opportunity to withdraw or correct the offending contention." *Elliott v. Tifton*, 64 F.3d 213, 216 (5th Cir. 1995). The "plain language of the rule indicates that this notice and opportunity prior to filing is mandatory." *Id.* It provides the party violating Rule 11 an opportunity to respond and explain themselves. *Modelist v. Miller*, 445 Fed. Appx. 737, 741-42 (5th Cir. 2011). TBS complied with the safe harbor provision, as it served its motion on Walters more than 21 days before the filing of its motion, with a demand that Walters pull down his offending filing. Dkt. No. 36 at 1. Walters not only failed to withdraw his pleading, he doubled down and made additional harassing statements in his response. Dkt. No. 38 at 1.

In addition to the authority granted by Rule 11, the federal courts also have the inherent authority to take steps to protect the integrity of the court from vexatious litigants. The Supreme Court has stated that "because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). Courts have therefore recognized that "the threshold for the use of inherent power sanctions is high," and there must be

"bad faith" before the court may use its inherent powers to impose sanctions. *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995); *Elliott*, 64 F.3d at 217. One of the well-settled appropriate exercises of a court's inherent powers is issuing pre-filing injunctions against vexatious litigants. *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 187 (5th Cir. 2008). Such an injunction "must be tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Farguson*, 808 F.2d at 360. Before issuing a pre-filing injunction, a "court must weigh all the relevant circumstances," including:

> (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Baum*, 513 F.3d at 189 (quoting *Cromer v. Kraft Foods N. Am., Inc.*, 390F.3d 812, 818 (4th Cir. 2004)).

Walters began his litigation career in this court while in prison.[1] In discussing a pro se prisoner who had filed numerous frivolous federal suits, the Fifth Circuit once remarked, "like any other pastime, recreational litigation has its price." *Gelabert v. Lynaugh*, 894 F.2d 746, 748 (5th Cir. 1990). In that case, the court determined that it was appropriate to impose sanctions "for the very purpose of causing the . . . litigant, with time on his hands and a disposition to retaliate against the system, to think twice before cluttering our dockets with frivolous or philosophical litigation." *Id.* The general rule is that in punishing misbehavior, a court should impose no more than the minimal sanctions necessary to correct the offending conduct. *In re First City Bancocorporation of Tex. Inc.*,

---

[1] *See Walters v. Livingston*, No. 1:12-cv-1072-ML in the Western District of Texas (prisoner civil rights suit); and *Walters v. Stephens*, No. 1:12-cv-718-LY in the Western District of Texas (writ of habeas corpus challenging prison disciplinary action).

282 F.3d 864, 867 (5th Cir. 2002). Here, imposing monetary sanctions or fines would be pointless. Walters has recently filed an application in this case to proceed *in forma pauperis* on appeal. His financial affidavit asserts that he has no assets other than a 2013 Nissan Sentra and $500 in the bank, and has medical and school debt in excess of $74,000. Dkt. No. 56-2 at 2-3.

Having considered the above, the Court believes the appropriate sanction here is to enjoin Mark Walters from filing any civil lawsuit in the Western District of Texas without first obtaining permission from a judge of this Court. Given the problems with Walters' last two cases, and his completely inappropriate behavior both in his pleadings and in his deposition, this sanction is warranted. The Court will also consider whether to make a criminal referral of the matters raised by the past two cases to the United States Attorney's Office.

## IV. Orders

For the reasons set forth above, the Court makes the following rulings on the pending motions:

- Defendant's Motion to Compel and Request for Sanctions (Dkt. No. 22) and Defendant's Motion for Sanctions under Fed. R. Civ. P. 11(c)(2) (Dkt. No. 36); are **GRANTED**;

- Plaintiff's Opposed Motion for Discovery Sanctions and/or Striking Defendant's Motion for Summary Judgment (Dkt. No. 30) and Plaintiff's Motion for Sanctions under Federal Rule of Civil Procedure 11(c)(2) (Dkt. No. 35) are **DENIED**; and

- Defendant's Motion to Strike (Dkt. No. 39) is **GRANTED**. The Court will work with the Clerk to strike the offending language from the relevant pleadings.

**FURTHER,** it is **ORDERED** that Mark Walters is **ENJOINED** from filing a civil suit in the Western District of Texas unless he first obtains permission to file such a suit from a judge of this court.

SIGNED this 30th day of September, 2019.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE